UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FRANCIS ANTHONY JOSEPH LOMBARDO, : | |
| : | CIVIL ACTION NO. 3:11-1895 |
| Plaintiff : | (JUDGE MANNION) |
| : | |
| v. : | |
| : | |
| JUSTIN TOKAR and MAIVAUN HOUSSIEN[1], : | |
| Defendants : | |

**MEMORANDUM**

Pending before the court is the report of Magistrate Judge Susan E. Schwab which recommends that the defendants' motion for summary judgment be granted and that the instant action be remanded for further proceedings. (Doc. No. 109). Upon review of the report and the parties' objections thereto, the court will adopt the report in its entirety.

By way of relevant background, on October 14, 2011, the plaintiff filed the instant civil rights action pursuant to 42 U.S.C. §1983. (Doc. No. 1). His complaint was given preliminary consideration pursuant to 28 U.S.C. §1915(e)(2), after which it was determined that the plaintiff had failed to state a claim upon which relief can be granted. (Doc. No. 4). The plaintiff was, however, permitted to file an amended complaint, which he did on November

---

[1]In addition to the listed defendants, the plaintiff had named Frank Coslett in his amended complaint. However, on May 31, 2013, the plaintiff filed a motion to withdraw his complaint with respect to Mr. Coslett, (Doc. No. 52), which was granted by order dated June 6, 2013, (Doc. No. 54).

22, 2011. (Doc. No. 5). The basis of the plaintiff's amended complaint is that the defendants, who are Pittston City police officers, subjected him to an unlawful search and seizure on October 14, 2009.

The defendants filed an answer to the plaintiff's amended complaint on March 9, 2012. (Doc. No. 21).

Following a lengthy discovery dispute, the defendants filed the pending motion for summary judgment, (Doc. No. 75), a supporting brief, (Doc. No. 76), and a statement of material facts with exhibits, (Doc. No. 77). After having been granted an extension of time to do so, on September 3, 2013, the plaintiff filed a counter statement of facts, (Doc. No. 93); on September 5, 2013, he filed an opposing brief, (Doc. No. 94); and on September 12, 2013, he filed exhibits, (Doc. No. 98). A reply brief was filed by the defendants on September 17, 2013. (Doc. No. 100).

By report dated December 16, 2013, Judge Schwab reviewed the defendants' motion for summary judgment, which addresses only the plaintiff's claim of an unlawful seizure, and recommended that it be granted. (Doc. No. 109). In addition, she noted that the plaintiff has pending his own motion for summary judgment which addresses his claim of an unlawful search and is not yet ripe for review. As a result, Judge Schwab recommended that the matter be remanded for further proceedings with regard to the unlawful search claim.

On December 30, 2013, the defendants filed objections to the report

and recommendation. (Doc. No. 110). The plaintiff filed objections on January 16, 2014. (Doc. No. 111).

When objections are timely filed to the report and recommendation of a magistrate judge, the district court must review *de novo* those portions of the report to which objections are made. 28 U.S.C. §636(b)(1); Brown v. Astrue, 649 F.3d 193, 195 (3d Cir. 2011). Although the standard is *de novo*, the extent of review is committed to the sound discretion of the district judge, and the court may rely on the recommendations of the magistrate judge to the extent it deems proper. Rieder v. Apfel, 115 F.Supp.2d 496, 499 (M.D.Pa. 2000) (citing United States v. Raddatz, 447 U.S. 667, 676 (1980)).

For those sections of the report and recommendation to which no objection is made, the court should, as a matter of good practice, "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b), advisory committee notes; see also Univac Dental Co. v. Dentsply Intern., Inc., 702 F.Supp.2d 465, 469 (M.D.Pa. 2010) (citing Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987) (explaining judges should give some review to every report and recommendation)). Nevertheless, whether timely objections are made or not, the district court may accept, not accept, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. §636(b)(1); Local Rule 72.31.

Upon review of the defendants' filing, without any elaboration, the

3

defendants simply object to Judge Schwab's report to the extent that it construes the amended complaint as setting forth a Fourth Amendment search claim. However, should this court agree that the amended complaint sets forth a claim for an unreasonable search, the defendants request that they be allowed an opportunity to file a cross-motion for summary judgment or, alternatively, that they be given leave to file a supplemental motion for summary judgment as to any unlawful search claim.

In considering the defendants' objection, the plaintiff alleges in his amended complaint that the defendants entered his residence without a warrant or probable cause and conducted a search of his belongings. Such allegations may form the basis of a §1983 claim based on the Fourth Amendment. See Reedy v. Evanson, 615 F.3d 197 (3d Cir. 2010); United States v. Silveus, 542 F.3d 993, 999 (3d Cir. 2008). Finding no error with the construction of the amended complaint by Judge Schwab, the court overrules the defendants' objection. Further, any request by the defendants to file a cross or supplemental motion for summary judgment addressing the unlawful search claim should be directed to Judge Schwab for her consideration upon remand.

Upon review of the plaintiff's objections, the plaintiff initially challenges Judge Schwab's determination that he had not established that a Fourth Amendment seizure had occurred.

In making her determination, Judge Schwab found the following facts,

4

which the court agrees are supported by the record:

    Before the date in question, Marc Keating ("Keating"), who is Lombardo's cousin, was on parole and occasionally slept over a house located at 90 Market Street. Keating and Lombardo had been doing maintenance on that residence. Lombardo, who had an arrangement with Keating, also stayed at 90 Market Street. While staying at 90 Market Street, Lombardo slept on the couch in the living room area, next to some of his personal belongings.

    On October 14, 2009, Coslett, a Pennsylvania Parole Officer, met Keating at 3 James Street, his approved residence, after Keating mentioned that he was actually staying at 90 Market Street. 3 James Street was approximately one block away from 90 Market Street. Coslett, therefore, informed Keating that he needed to change his approved residence to 90 Market Street if he was not staying at 3 James Street every night in order to avoid violating his conditions of parole. Keating agreed with Coslett and changed his approved address to 90 Market Street by signing a Home Provider Agreement. Generally, a Home Provider Agreement gives authority to parole agents to search a parolee's residence when reasonable suspicion exists that conditions of parole supervision have been violated. After signing the Home Provider Agreement, Coslett went over to Keating's new address, and Keating showed Coslett around the house.

    While Keating showed Coslett around the house at 90 Market Street, Lombardo was sleeping on the couch. At one point, Keating and Coslett went upstairs. While upstairs Coslett was shown Keating's bedroom. In the bedroom, Coslett saw several personal checks on Keating's dresser that were made out to individuals other than Keating or Lombardo. As a result, Coslett believed that he had reasonable suspicion to conduct a warrantless search based upon the checks he saw, which he considered to be a potential violation of parole. Subsequently, Coslett went out to his car, called his supervisor and the Pittston Police Department in order to have officers come and assist him searching Keating's residence at 90 Market Street. According to Coslett, he needed an officer present for safety reasons. Minutes later, Tokar and Houssien arrived.

    When Tokar and Houssien arrived, Coslett and Keating were on the back porch at 90 Market Street. Keating surrendered the checks to Tokar. Coslett, however, mentioned to Tokar and Houssien that Lombardo was sleeping on the couch inside the residence. Lombardo heard his name mentioned by the

> defendants than "hurried up, put [his] sneakers on, and [he] walked out the front door." Lombardo did not hear the defendants say that they were going to arrest him; instead, he heard them say that they would "get him." Thus, when Tokar and Houssien entered the residence to sweep it, presumably for security purposes, Lombardo was already gone.
>
> Several days later, Lombardo went to 3 James Street and picked up his medication and air pistol. Those items were part of Lombardo's personal belongings that he was keeping at 90 Market Street. The thrust of Lombardo's complaint is that those two items were seized by the defendants. Keating admits in his deposition, however, that the defendants gave him both items belonging to Lombardo. Keating also testified that before the defendants completed their search, Tokar rummaged through Lombardo's belongings including his diary and a Hustler Magazine, which were located in a back bedroom (not Keating's) where Lombardo was storing additional personal belongings.

(Doc. No. 109, pp. 3-5).

The Fourth Amendment to the United States Constitution protects against "unreasonable searches and seizures." U.S. CONST. amend. IV. "A Fourth Amendment 'seizure' of personal property occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'" Brown v. Muhlenberg Twp., 269 F.3d 205, 209 (3d Cir. 2011) (quoting United States v. Jacobsen, 466 U.S. 109, 113 (1984)).

Pointing to the undisputed facts of record, Judge Schwab found that the plaintiff had not met his burden of establishing that a Fourth Amendment seizure had occurred. Specifically, reading the record in a light most favorable to the plaintiff, Judge Schwab found that both defendants had denied ever

removing the plaintiff's medicine and air pistol from the residence[2]. In addition, Judge Schwab relied on the plaintiff's own testimony which indicates that he has no knowledge of who removed the items from the residence. Finally, Judge Schwab pointed to the testimony of the plaintiff's "material witness," who testified that the officers had given him the plaintiff's medication and air pistol. It is this final point about which the plaintiff makes much ado in his objections. Specifically, the plaintiff argues that Mr. Keating's testimony was that the officers had given him "back" the items. The plaintiff argues that the officers could not have given the items back if they had not first seized them. However, contrary to the plaintiff's assertion, simply because the officers may have possessed the items at some point during the search and then gave them to Mr. Keating does not establish that the officers meaningfully interfered with the plaintiff's possessory interests in the items. The officers were presumably entitled to examine those items to determine what they were and to whom they belonged. That does not constitute a seizure. Given the facts of record as a whole, the court agrees that the plaintiff has failed to meet his burden of establishing that a seizure occurred by the defendants in this case. The plaintiff's objections will therefore be overruled and the report of

---

[2] In his responsive statement of facts, the plaintiff does not dispute that neither defendant Tokar nor defendant Houssein took any of the plaintiff's personal belongings from the 90 Market Street residence, but responds only that they had illegally entered and searched the residence. (Doc. No. 93, ¶¶26-27).

Judge Schwab will be adopted as to this issue.

The plaintiff also objects to Judge Schwab's determination that the defendants are entitled to qualified immunity. As discussed by Judge Schwab, "[c]ertain officials, including police officers performing 'discretionary functions," are shielded from suit if their conduct did not violate a 'clearly established statutory or constitutional right [ ] of which a reasonable person would have known.'" Dull v. W. Manchester Twp. Police Dep't, 604 F.Supp.2d 739, 748 (M.D.Pa. 2009)(quoting Wilson v. Layne, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (alterations in the original)). The qualified immunity analysis has two prongs. Pearson v. Callahan, 555 U.S. 223, 232 (2009). One prong of the analysis is whether the facts that the plaintiff has alleged or shown make out a violation of a constitutional right. Id. The other prong of the analysis is whether the right was clearly established. Saucier v. Katz, 533 U.S. 194, 201 (2001). The court is permitted to exercise its discretion in deciding which of the two prongs of the qualified-immunity analysis should be addressed first in light of the circumstances of the particular case. Pearson, 555 U .S. at 236.

Here, having found no underlying Fourth Amendment seizure violation, Judge Schwab determined that the defendants were entitled to be shielded from liability under the doctrine of qualified immunity. In his objections, the plaintiff's argument that the defendants are not entitled to qualified immunity goes to his search claim, not his seizure claim. Given that the plaintiff has not

8

substantively challenged Judge Schwab's determination with respect to the defendants' entitlement to qualified immunity based upon the Fourth Amendment seizure claim, the court will overrule the plaintiff's objections and adopt the report of Judge Schwab on this issue as well.

An appropriate order shall issue.

*s/Malachy E. Mannion*
MALACHY E. MANNION
United States District Judge

Date:  January 29, 2014

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2011 MEMORANDA\11-1895-01.wpd