## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

FRANCIS ANTHONY JOSEPH :
LOMBARDO,      CIVIL ACTION NO. 3:11-1895
         :
  **Plaintiff**      (JUDGE MANNION)
         :
  v.
         :
JUSTIN TOKAR and
MAIVAUN HOUSSIEN[1],   :

  **Defendants**     :

### MEMORANDUM

Pending before the court is the report of Magistrate Judge Susan E. Schwab, (Doc. 143), which recommends that the plaintiff's motion for summary judgment, (Doc. 87), be denied and the defendants' cross-motion for summary judgment, (Doc. 134), be granted. Upon review of Judge Schwab's report and the plaintiff's objections thereto, the court will adopt the report in its entirety.

By way of relevant background, on October 14, 2011, the plaintiff filed the instant civil rights action pursuant to 42 U.S.C. §1983. (Doc. 1). His complaint was given preliminary consideration pursuant to 28 U.S.C. §1915(e)(2), after which it was determined that the plaintiff had failed to state a claim upon which relief can be granted. (Doc. 4). The plaintiff was, however,

---

[1] In addition to the listed defendants, the plaintiff had named Frank Coslett in his amended complaint. However, on May 31, 2013, the plaintiff filed a motion to withdraw his complaint with respect to Mr. Coslett, (Doc. No. 52), which was granted by order dated June 6, 2013, (Doc. No. 54).

permitted to file an amended complaint, which he did on November 22, 2011. (Doc. 5). The basis of the plaintiff's amended complaint is that the defendants, who are Pittston City police officers, subjected him to an unlawful search and seizure on October 14, 2009.

The defendants filed an answer to the plaintiff's amended complaint on March 9, 2012. (Doc. 21).

Following a lengthy discovery dispute, the defendants filed their initial motion for summary judgment on August 15, 2013. (Doc. No. 75). By report dated December 16, 2013, Judge Schwab reviewed the defendants' motion, which addressed only the plaintiff's claim of an unlawful seizure, and recommended that it be granted. (Doc. 109). In addition, she noted that the plaintiff had pending his own motion for summary judgment, (Doc. 87), which addressed his claim of an unlawful search and was not yet ripe for review. As a result, Judge Schwab recommended that the matter be remanded for further proceedings with regard to the unlawful search claim. By memorandum, (Doc. 112), and order, (Doc. 113), dated January 29, 2014, Judge Schwab's report was adopted in its entirety and the matter was remanded for further proceedings.

Upon remand, on March 4, 2014, the defendants filed a brief in opposition to the plaintiff's pending motion for summary judgment with exhibits, (Doc. 116), along with a statement of facts responsive to that of the plaintiff's, (Doc. 117).

2

The defendants requested, (Doc. 128), and were granted, (Doc. 130), the opportunity to file a supplemental motion for summary judgment on the search issue before the court, which was filed on June 17, 2014, along with exhibits, (Doc. 134), a statement of facts, (Doc. 135), and supporting brief, (Doc. 136). The plaintiff filed a brief in opposition to the defendants' supplemental motion for summary judgment on July 21, 2014, (Doc. 139), along with a response to their statement of material facts, (Doc. 140), and supporting exhibits, (Doc. 141). The defendants filed a reply brief in support of their motion on August 4, 2014. (Doc. 142).

On August 26, 2014, Judge Schwab issued the pending report in which she recommends that the plaintiff's motion for summary judgment be denied and the defendants' cross-motion for summary judgment be granted. (Doc. 143). The plaintiff filed objections to the report on September 12, 2014, (Doc. 152), and the defendants responded to the plaintiff's objections on September 25, 2014, (Doc. 153).

When objections are timely filed to the report and recommendation of a magistrate judge, the district court must review *de novo* those portions of the report to which objections are made. 28 U.S.C. §636(b)(1); Brown v. Astrue, 649 F.3d 193, 195 (3d Cir. 2011). Although the standard is *de novo*, the extent of review is committed to the sound discretion of the district judge, and the court may rely on the recommendations of the magistrate judge to the extent it deems proper. Rieder v. Apfel, 115 F.Supp.2d 496, 499 (M.D.Pa.

2000) (citing United States v. Raddatz, 447 U.S. 667, 676 (1980)).

For those sections of the report and recommendation to which no objection is made, the court should, as a matter of good practice, "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b), advisory committee notes; see also Univac Dental Co. v. Dentsply Intern., Inc., 702 F.Supp.2d 465, 469 (M.D.Pa. 2010) (citing Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987) (explaining judges should give some review to every report and recommendation)). Nevertheless, whether timely objections are made or not, the district court may accept, not accept, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. §636(b)(1); Local Rule 72.31.

In his objections, the plaintiff argues that Judge Schwab did not correctly apply the summary judgment standard[2]. Specifically, he argues that Judge Schwab resolved factual disputes in favor of the defendants, the moving parties, instead of considering the evidence in a light most favorable

_____

[2]In relation to this argument, the plaintiff raises some objection to Judge Schwab's prior report, (Doc. 109), addressing the defendants' motion for summary judgment on the seizure claim. (Doc. 152, pp. 2-3). The court has already addressed the plaintiff's objections to that report and overruled his objections. At this point any further objections are untimely and will not be considered herein.

to him as the non-moving party[3].

In considering the plaintiff's initial objection, the only remaining issue in this case is whether the plaintiff was subject to an unlawful search of his property by the defendants. In response to the defendants' statement of material facts in support of their motion for summary judgment on this issue, the plaintiff admitted the following facts[4]. As of October 14, 2009, Marc Keating, the plaintiff's cousin, was on parole, and his approved residence while on parole was 3 James Street, Pittston, Pennsylvania. Despite his approved residence of James Street, Mr. Keating stayed at 90[5] Market Street, Pittston, Pennsylvania "once in a while." The plaintiff lived at the 90 Market Street residence from July through December of 2009. During that period of time, the plaintiff stayed there every night, sleeping on the couch next to his personal belongings. Among other belongings, the plaintiff possessed an air pistol and medication.

---

[3]As previously set forth, there are cross motions for summary judgment pending. However, as discussed by Judge Schwab, each motion must be considered to determine whether either movant has established that no genuine issue of material fact exists for trial. (Doc. 143, pp. 10-11).

[4]The defendants' statement of facts can be found at Doc. 135, with the plaintiff's responses at Doc. 140.

[5]The plaintiff points out that, at times, Judge Schwab incorrectly references the residence as being 30 Market Street. While the report does reference 30 Market Street, as opposed to 90 Market Street, on a number of occasions, it is of no consequence to the substance of Judge Schwab's Fourth Amendment analysis. Such error is harmless.

On October 14, 2009, Pennsylvania State Parole Agent Frank Coslett met Mr. Keating at his approved James Street residence, where Mr. Keating informed Agent Coslett that he wanted to have his approved residence changed to 90 Market Street. Since Mr. Keating was staying at the Market Street residence and not the James Street residence, Agent Coslett informed Mr. Keating that he needed to change his approved residence to 90 Market Street. Mr. Keating, in fact, entered into a Home Provider Agreement on that day for the 90 Market Street residence. Agent Coslett and Mr. Keating went to the 90 Market Street residence and Mr. Keating showed Agent Coslett around the house. When Mr. Keating and Agent Coslett arrived at the residence, the plaintiff was sleeping on the couch in the living room.

While being shown the residence, Agent Coslett found five personal checks on a dresser that were not Mr. Keating's and that were made out to a person other than Mr. Keating. Believing this to be a violation of Mr. Keating's parole, Agent Coslett called his supervisor and the Pittston City Police Department. Agent Coslett asked that the Pittston City Police Department dispatch an officer for officer presence at the 90 Market Street residence, since he was going to search the residence. Agent Coslett believed that he had reasonable suspicion to conduct a warrantless search of the residence based upon the parole violations he discovered and because Mr. Keating had signed the Home Provider Agreement for the 90 Market Street residence, which gave authority to the parole agent to search the

parolee's residence when reasonable suspicion exists that conditions of the supervision have been violated[6].

Defendants Tokar and Houssien were dispatched to the scene. At that time, Agent Coslett mentioned to the officers that the plaintiff was inside sleeping on the couch. Having previous knowledge of the plaintiff, the officers entered the home. When the officers entered the house, the plaintiff was gone from the couch. The plaintiff had gone to the bathroom and, while there, recognized the voices of the officers in the other room. The plaintiff had heard defendant Tokar say that he was "going to get him," and so he put on his sneakers and left the house in response. The officers swept the house looking for the plaintiff, but he was gone.

Once the search of the residence by Agent Coslett commenced, despite being given specific instructions to remain seated downstairs during the search, Mr. Keating went upstairs to the bathroom and subsequently flushed the toilet[7]. Not knowing whether Mr. Keating was attempting to conceal evidence, Agent Coslett proceeded to handcuff and search Mr. Keating. It

---

[6]The plaintiff does not challenge this factual statement, but instead raises legal argument as to why he thinks the search was not proper as to him. The court will address the plaintiff's concerns in its discussion of the applicable law.

[7]The plaintiff challenges the location of the officers at the time this occurred, but does not challenge that Mr. Keating did not obey the orders to remain seated downstairs and, instead, proceeded to go upstairs and flush the toilet.

was requested that defendant Houssien take Mr. Keating downstairs. While Mr. Keating was handcuffed downstairs, the upstairs of the residence was searched. The downstairs of the residence was then searched while Mr. Keating was still handcuffed. After the search of the downstairs was complete, defendants Tokar and Houssien left the residence.

Mr. Keating was subsequently charged with five counts of receiving stolen property for the checks that Agent Coslett found on his dresser and later entered a plea of guilty to the charges[8].

With the above facts in mind, Judge Schwab set forth the standard for a Fourth Amendment search claim:

> The Fourth Amendment guarantees the "right of the people to be secure in their persons . . . against *unreasonable* searches and seizures." U.S. CONST. Amend. IV (emphasis added). As the text makes clear, "the ultimate touchstone of the Fourth Amendment is 'reasonableness.'" Brigham City v. Stuart, 547 U.S. 398, 403 (2006). "[R]easonableness generally requires the obtaining of a judicial warrant." Vernonia School Dist. 47 J v. Acton, 515 U.S. 646, 653 (1995). In the absence of a warrant, however, the Supreme Court instructs that warrantless searches are allowed when the circumstances make it reasonable, within the meaning of the Fourth Amendment, to dispense with the warrant requirement. Kentucky v. King, 131 S.Ct. 1849, 1858 (2011). In this regard, "the reasonableness of a search is determined by [balancing], on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate

---

[8]Although the plaintiff denies this fact in his brief opposing the defendants' motion for summary judgment, the defendants' materials confirm that Mr. Keating was charged by criminal complaint for the stolen checks and entered a plea of guilty to the charges. (Doc. 134, Ex. A, pp. 17, 42).

government interests." United States v. Knights, 534 U.S. 112, 118-19 (2001 (internal quotations omitted).

(Doc. 143, p. 12).

When a parolee is involved and has signed a consent agreement, such as in the instant case with Mr. Keating, Judge Schwab correctly noted that "both sides of the balance are affected; the parolee's reasonable expectation of privacy is decreased and the government's reasonable need to monitor behavior is increased." Id. at 12-13 (citing United States v. Williams, 417 F.3d 373, 376 (3d Cir. 2005) (citations omitted)). In this case, "'no more than reasonable suspicion' is required to justify a search" of a parolee's residence. Id. at 13 (citing Williams, 417 F.3d at 376 (quoting Knights, 534 U.S. at 121)). As discussed by Judge Schwab, in deciding whether reasonable suspicion exists, the court must consider the totality of the circumstances and examine whether the "officer ha[d] a particularized and objective basis for suspecting legal wrongdoing." Id. (citing Williams, 417 F.3d at 376 (quotation omitted)).

In the instant case, the undisputed facts, as demonstrated by the plaintiff's response to the defendants' statement of material facts in support of their motion for summary judgment, establish that Mr. Keating was on parole and under the supervision of Agent Coslett. When conducting a walk through of Mr. Keating's newly designated residence, Agent Coslett found five checks which were not Mr. Keating's and which were made out to someone other than Mr. Keating. The fact that Mr. Keating was in possession of a

9

number of checks which were not his and were not made out to him provided Agent Coslett with the requisite level of suspicion to conduct a warrantless search of the residence to determine whether Mr. Keating had violated the conditions of his parole. Contrary to the plaintiff's argument, there is nothing to show that Judge Schwab improperly weighed these or any other facts in favor of the defendants and against the plaintiff. In fact, all of the facts outlined above were admitted as true by the plaintiff in his response to the defendants' motion for summary judgment. The court therefore overrules the plaintiff's objections to the report of Judge Schwab on this basis.

The plaintiff also objects to Judge Schwab's report arguing that the evidence of record shows that there was no real need for Agent Coslett to conduct a search of the Market Street residence and that he was merely acting as a "stalking horse" to allow the defendants to look for evidence of criminal activity.

Judge Schwab addressed the plaintiff's "stalking horse" theory[9] in her

---

[9]"In <u>United States v. Watts, 67 F.3d 790, 794 (9th Cir. 1995)</u> (internal citations omitted) the Ninth Circuit described the "stalking horse" theory in these terms:

A probation officer acts as a stalking horse if he conducts a probation search on prior request of and in concert with law enforcement officers. However, collaboration between a probation officer and police does not in itself render a probation search unlawful. The appropriate inquiry is whether the probation officer used the probation search to help police evade the Fourth
(continued...)

report finding that this theory was rejected by the Third Circuit in light of Supreme Court precedent. (Doc. 143, p. 16, n.7 (citing Willard v. Pennsylvania Soc. for the Prevention of Cruelty to Animals, 525 F. App'x 217, 220 (3d Cir. 2013) (citing United States v. Williams, 417 F.3d 373, 376 (3d Cir. 2005)). Moreover, even if the theory were found to apply, Judge Schwab correctly noted that there is no evidence on the record before the court of improper collusion between Agent Coslett and defendants Tokar and Houssien to evade the requirements of the Fourth Amendment. Id. (citing Williams, 417 F.3d at 377-78). In fact, this case does not involve an instance where the defendant officers called upon Agent Coslett as a ruse to avoid getting a warrant to conduct a search, but instead it was Agent Coslett who, in the performance of his duties, called upon the defendant officers for police presence while he conducted a search to determine whether Mr. Keating had violated the conditions of his parole. The court finds no error with Judge

---

[9](...continued)
Amendment's usual warrant and probable cause requirements or whether the probation officer enlisted the police to assist his own legitimate objectives. A probation officer does not act as a stalking horse if he initiates the search in the performance of his duties as a probation officer. In a more succinct articulation of the same view, the Eighth Circuit concluded in United States v. McFarland, 116 F.3d 316, 318 (8th Cir. 1997) that a parole search may be invalidated 'when it is nothing more than a ruse for a police investigation.'"

United States v. Williams, 417 F.3d at 377.

Schwab's analysis on the plaintiff's "stalking horse" theory and therefore overrules his objections on this basis.

Next, the plaintiff takes issue with Judge Schwab's report on the basis that he was not on parole at the time of the search nor did he ever sign a Home Provider Agreement allowing for a search of his property. The plaintiff argues therefore that his property should not have been searched by Agent Coslett or anyone else. The plaintiff further indicates in response to the defendants' statement of facts and in his objections to Judge Schwab's report that the fact that Mr. Keating was on parole at the time at issue is of no relevance to his unlawful search claim.

As discussed by Judge Schwab in her report, no one contests that the plaintiff had an expectation of privacy in his property, that he was not on parole at the time of the search, or that he did not sign a Home Provider Agreement allowing for a search of his residence. Further, no one contests that the plaintiff could have refused consent to a search of areas of the residence which were not common to himself and Mr. Keating. However, in order to do so, the plaintiff would need to have been present at the residence. See Georgia v. Randolph, 547 U.S. 103, 111 (2006) (holding that "a *physically present* inhabitant's express refusal of consent to a police search [of his home] is dispositive as to him, regardless of the consent of a fellow occupant." (emphasis added)). The plaintiff, however, chose to leave the residence thereby waiving his right to refuse consent to the search. See

12

Fernandez v. California, 134 S.Ct. 1126 (2014) (holding that where an inhabitant is not physically present his or her refusal to consent does not negate the consent provided by a co-inhabitant). As noted by Judge Schwab, the plaintiff does not challenge that Mr. Keating, a co-inhabitant of the residence as provided in the Home Provider Agreement, had the authority to consent to a search of the residence[10].

Relatedly, to the extent that the plaintiff argues that the defendants had no authority to search through his personal belongings, as discussed by Judge Schwab, there is no evidence in the record to demonstrate that the defendants knew or were reasonably aware at the time the search was conducted that the items or areas they were searching belonged to the plaintiff. In fact, there is no evidence in the record that the defendants knew or were reasonably aware that the plaintiff was living at the residence with Mr. Keating. The only fact known at the time was that the plaintiff was sleeping on the couch when Agent Coslett arrived. Plaintiff left the residence prior to the

---

[10]The court notes that, in his objections, the plaintiff challenges Judge Schwab's citation to a treatise to which he does not have access. In considering this argument, Judge Schwab cited to the treatise to outline what the officers would need to have done, if the plaintiff had been present at the time of the search. The uncontested facts in this case establish that the plaintiff was not present at the time of the search and, therefore, such discussion was simply corollary to the substantive issue of what happens when a co-inhabitant is not present at the time of a search. For the substantive issue, Judge Schwab relied upon Supreme Court precedent. The court finds that Judge Schwab's citation to the treatise was not prejudicial to the plaintiff.

time of the search without informing the defendants of his status as a co-inhabitant of the residence. As indicated by the court in its prior decision addressing the plaintiff's unlawful seizure claim, "[the officers were presumably entitled to examine those items to determine what they were and to whom they belonged." (Doc. 112). The plaintiff's objections will therefore be overruled on this basis.

The plaintiff also objects to Judge Schwab's determination that the defendants are entitled to qualified immunity. As previously discussed by the court, the qualified immunity analysis has two prongs. Pearson v. Callahan, 555 U.S. 223, 232 (2009). One prong of the analysis is whether the facts that the plaintiff has alleged or shown make out a violation of a constitutional right. Id. The other prong of the analysis is whether the right was clearly established. Saucier v. Katz, 533 U.S. 194, 201 (2001). The court is permitted to exercise its discretion in deciding which of the two prongs of the qualified-immunity analysis should be addressed first in light of the circumstances of the particular case. Pearson, 555 U .S. at 236.

Here, Judge Schwab found not only that no reasonable juror could render a verdict in the plaintiff's favor on his Fourth Amendment claim for an unlawful search, but also that any perceived unlawfulness of the conduct engaged in by the defendants would not have been apparent to an objectively reasonable official at the time of the search. In so finding, Judge Schwab noted that there is no evidence in the record demonstrating that the

14

defendants knew or were reasonably aware that anyone other than Mr. Keating was residing at the Market Street residence. In addition, Judge Schwab noted that there is no evidence in the record that the defendants knew or were reasonably aware that the items belonging to Lombardo belonged to anyone other than Mr. Keating prior to their inspection. Given this, Judge Schwab found that the defendants are shielded from liability under the doctrine of qualified immunity. The court finds no error in Judge Schwab's reasoning and overrules any objection to the qualified immunity analysis by the plaintiff.

An appropriate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date:  November 26, 2014**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2011 MEMORANDA\11-1895-02.wpd